Leodis C. Matthews, Esq. SBN 109064
E-mail: LeodisMatthews@ZhongLun.com
Donald K. Wilson, Jr., Esq. SBN 89857
E-mail: DonaldWilson@Zhonglun.com
Dick P. Sindicich, Esq. SBN 78162
E-mail: DickSindicich@Zhonglun.com
**ZHONG LUN LAW FIRM LLP**
4322 Wilshire Boulevard, Suite 200
Los Angeles, California 90010-3792
Tel. 323.930.5690
Fax.323.930.5693
Attorneys for Plaintiffs ZHENGFU PICTURES LIMITED and BEIJING
ZHUMENG QIMING CULTURE & ART CO., LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHENGFU PICTURES LIMITED and BEIJING ZHUMENG QIMING CULTURE & ART CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>SMC SPECIALTY FINANCE, LLC,<br><br>Defendant. | Case No.:  2:21-CV-01795-SB-AGRx<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>*Hon. Stanley Blumenfeld, Jr.*<br>*Magistrate Judge Alicia G. Rosenberg*<br><br>Hearing Date:  April 9, 2021<br>Hearing Time:  8:30 a.m.<br>Courtroom:  6C |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT .............................................................1

SUMMARY OF PLAINTIFFS' ARGUMENTS ......................................2

BACKGROUND ....................................................................................4

    Zhengfu Co-Finances the Greyhound Production ...........................4

    ████████████████████████████ . ...........................5

    Zhang Fraudulently Pledges Plaintiffs' Assets. .............................5

    SMC Attempts to Take Control of the Greyhound and Midway Rights .........6

    Plaintiffs Discover Zhang's Fraud and Zhang Confesses. .............7

    SMC's Conduct is Harming Plaintiffs. ..........................................8

ARGUMENT ..........................................................................................9

I.      PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF. ......................9

    A.    The Standard For A Preliminary Injunction. ........................9

    B.    Plaintiffs Are Likely To Succeed On The Merits. .............10

        1.    Zhengfu Owns the Greyhound Rights and Zhumeng Owns the Midway Rights (Count I). ...................................................10

        2.    SMC Violated Federal Copyright Law (Count II) ...................12

        3.    SMC's Foreclosure Sale was Defective (Count III). ...............13

        4.    SMC Intentionally Interfered with Plaintiffs' Contractual Relations (Count IV). .................................................................14

        5.    SMC Violated Unfair Competition Law (Count V). ...............16

6.    SMC Interfered with Plaintiffs' Prospective Economic
Relations (Count VI). ...............................................18

7.    SMC Converted Plaintiffs' Rights (Count VII)........................20

C.    Absent An Injunction, Plaintiffs Will Suffer Irreparable Injury.........21

D.    The Balance Of Equities Weighs In Plaintiffs' Favor. .......................23

E.    A Preliminary Injunction Serves The Public Interest. .......................23

II.    GIVEN THE PROOF, NO EVIDENTIARY HEARING IS
NECESSARY… ..........................................................…………..24

III.    THE COURT SHOULD WAIVE THE SECURITY REQUIREMENT.......25

CONCLUSION ......................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d. 1127 (9th Cir. 2011) ...............3

*Arcturus Therapeutics Ltd. v. Payne*, Case No. 18 cv 766-MMA (NLS),
    2018 WL 2316790 (S.D. Cal. May 22, 2018) ...............................25

*Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878 (9th Cir. 2003) .................25

*Crocker Nat'l Bank of San Francisco v. Byrne & McDonnell*, 178 Cal. 329
    (1918) .......................................................................................11

*De Vico v. U.S. Bank*, CV 12-08440 MMM (FFMx), 2012 WL 10702854
    (C.D. Cal. Oct. 29, 2012) ...........................................................23

*Diamond Multimedia Systems, Inc. v. Superior Court*, 968 P.2d 539
    (Cal. 1999).............................................................................23, 24

*Fed. Trade Comm'n v. J.K. Publications, Inc.*, No. CV 99-00044 ABC (AJWx),
    2001 WL 36086354 (C.D. Cal. Jan. 17, 2001) ..............................11

*Fong v. E. West Bank*, 19 Cal. App. 5th 224 (2018) .................................20

*Gemcap Lending I LLC v. Crop USA Ins. Agency Inc.*, CV 13-05504 SJO
    (MANx), 2015 WL 12746212 (C.D. Cal. Aug. 17, 2015) ...........................14

*hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985 (9th Cir. 2019).........................9, 10

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ...............................24

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (Cal. 2003) ..........18

*Lee v. Hanley*, 354 P.3d 334 (Cal. 2015)..............................................20

*McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006)............................16

*Mellen Inc. v. Biltmore Loan & Jewelry – Scottsdale LLC*, No. CV-16-00648-
    PHX-DLR, 2016 WL 3144165 (D. Ariz. June 6, 2016) .....................21, 24

*N. Am. Chemical Co. v. Superior Ct.*, 59 Cal. App. 4th 764 (1997) .....................19

*Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38 (2010)...............................20

*Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513 (Cal. 1998)....................15

*Rubin ex rel. NLRB v. Vista Del Sol Health Services, Inc.*, 80 F. Supp. 3d 1058
　　(C.D. Cal. 2015) ........................................................................24

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832
　　(9th Cir. 2001) .........................................................................22

*Sun 'n Sand, Inc. v. United Cal. Bank*, 21 Cal. 3d 671 (Cal. 1978) .................. 19-20

**Statutes**

17 U.S.C. § 204 .............................................................................12

Cal. Bus. & Prof. Code § 17200.........................................................16

Cal. Com. Code § 9203(b).........................................................11, 13

Cal. Com. Code § 9607 ...................................................................14

Cal. Com. Code § 9610 ...................................................................14

Cal. Com. Code § 9611 ...................................................................13

**Rules**

Fed. R. Civ. P. 65(c) .......................................................................25

Plaintiffs Zhengfu Pictures Limited ("Zhengfu") and Beijing Zhumeng Qiming Culture & Art Co., Ltd. ("Zhumeng") respectfully submit this Memorandum of Law supporting their Motion for a Preliminary Injunction (the "Motion") against Defendant SMC Specialty Finance, LLC ("SMC").

## PRELIMINARY STATEMENT

Plaintiffs are independent and unrelated Chinese companies ███████████ ███████████████████.  Zhengfu co-financed the motion picture, "Greyhound," with Sony Pictures Worldwide Acquisitions Inc. ("SPWA"); and ███████████ ████████████████████████  Both are joined in this lawsuit because each was similarly defrauded in the same loan transaction between Defendant SMC and a British Virgin Islands company, Golden Title Investments Limited ("Golden Title"), acting through Xi Zhang (a/k/a Alex Zhang) ("Zhang").  Without Plaintiffs' knowledge or authorization, SMC, in cooperation with Zhang, created and executed fraudulent documents to encumber and gain control over Plaintiffs' rights in the Greyhound and Midway motion pictures.  After a purported nonjudicial UCC foreclosure sale, SMC now claims it is the owner of ███████████████ █████████████████████.

████████████████████████████████████████

████████████████████████████████.  ████████████████

████████████████████████████████████████

1  ████ Zhengfu is also entitled to distribute Greyhound in China—the largest

2  market for movie-goers—and to negotiate with its co-financier, SPWA, for rights to

3  distribute Greyhound in Hong Kong, Taiwan, and Macau.

4  SMC is acting to deprive Plaintiffs of their rights.  In October 2018, for a

5  separate motion picture production, SMC loaned money to Golden Title.  SMC and

6  Zhang mutually agreed to execute assignments to pledge Plaintiffs' Greyhound and

7  Midway rights as collateral for the Golden Title loan.  After Golden Title defaulted

8  on its loan obligations to SMC, SMC conducted a purported nonjudicial foreclosure

9  of that collateral, then demanded that ███████████████████████████

10  ██████████████████████████████████.

11  ### SUMMARY OF PLAINTIFFS' ARGUMENTS

12  All four factors that Courts consider in issuing a preliminary injunction favor

13  Plaintiffs.  First, Plaintiffs are likely to succeed on the merits of their claims.  Neither

14  of Plaintiffs was aware of or executed assignments of their rights under the Golden

15  Title financing agreements.  Nor do Plaintiffs have any interest in, relation to, or

16  even knowledge of Golden Title.  After being confronted, Zhang fully described his

17  role in the fraudulent scheme, admitting he forged signatures, used forged images of

18  Plaintiffs' company seals, and acted without Plaintiffs' knowledge or permission.

19  SMC knowingly and willfully participated in the scheme.  ███████████████

20  ██████████████████████████████████████████████████

██████████████████████████████████████████; and indeed,

under the Greyhound agreement, an unauthorized assignment was a material breach,

and an event of default.  SMC knew those conditions were not satisfied but prepared,

and with Zhang's cooperation, executed purported assignments of those rights as its

collateral.  When Golden Title defaulted on its loan obligations to SMC, SMC

undertook nonjudicial statutory UCC foreclosures on Plaintiffs' rights.

Second, Plaintiffs will suffer irreparable injury without the Court's

intervention.  Having engaged in a nonjudicial foreclosure action, SMC is free to

transfer Plaintiffs' rights to an innocent third party, leaving Plaintiffs with only more

lawsuits and without a legal remedy.  Without the Court's intervention, Zhengfu's

Greyhound distribution rights continue to be irreparably harmed.  Only Zhengfu—

not SMC or an assignee—may distribute Greyhound in China.

Third, equitable principles favor Plaintiffs.  SMC's claims and interference

with Plaintiffs' distribution rights are irreparably damaging Plaintiffs' assets,

reputation, and goodwill.  By contrast, SMC is not entitled to assert ownership rights

to the motion pictures based upon its fraudulent documentation.

Fourth, since public interest favors the protection of fraud victims, there is no

"critical public interest" that the grant of injunctive relief would injure.  *Alliance for

the Wild Rockies v. Cottrell*, 632 F.3d. 1127, 1138 (9th Cir. 2011).

The Court should grant this Motion and enjoin SMC.

# BACKGROUND

## Zhengfu Co-Finances the Greyhound Production.

On July 21, 2017, Zhengfu contracted with SPWA regarding the Greyhound motion picture (the "Greyhound Co-Financing Agreement," Ex. 1[1]).  (Decl. of Jianu Han, dated Feb. 10, 2021 (Ex. 24) ("Han Decl.") ¶ 8.)   Under that Agreement, Zhengfu is entitled to a portion of revenues earned from Greyhound's exploitation, motion picture distribution rights, and copyright co-ownership with SPWA (the "Greyhound Rights").  (Han Decl. ¶¶ 11-14; Ex. 1.)  Zhengfu retained the exclusive right to distribute Greyhound in China, and the parties agreed to negotiate the rights to distribute Greyhound in Hong Kong, Taiwan, and Macau.  (Han Decl. ¶ 12.)

When Zhengfu was considering whether to co-finance the Greyhound production, a producer in the Chinese motion picture industry introduced Zhang to Zhengfu.  (*Id*. ¶ 17.)   Zhang expressed to Zhengfu a willingness to act as an intermediary to convey information between Zhengfu and SPWA.  (*Id*. ¶ 18.) Zhengfu initially utilized Zhang to interpret and communicate with SPWA on its behalf during negotiations of the Greyhound Co-Financing Agreement.  (*Id*. ¶¶ 18-20.)   However, Zhang did not have the authority to execute any agreement on Zhengfu's behalf.  (*Id*. ¶¶ 21-23.)  Nor did Zhang have authority to assign, pledge,

---

[1] "Ex. __" refers to the Exhibits included in the Appendix to the Complaint, and pincites refer to the page numbers stamped at the bottom of Exhibit pages.

1  sell, or otherwise compromise any of Zhengfu's rights, including rights under the

2  Greyhound Co-Financing Agreement.  (*Id*. ¶ 22.)

3  ████████████████████████████████████

4  ████████████████████████████████████████████

5  ███████████████████████████████████████████████

6  ███████████████████████████████████████████████

7  ███████████████████████████████████████████████

8  ███████████████████████████████████████████████

9  ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 █████████████████████████████████

13     Zhumeng did not hire nor engage Zhang as an employee or otherwise, ██

14 ██████████████████████████████████████████████ (Tie Decl.

15 ¶¶ 16-17.)  Nor did Zhumeng ever empower Zhang to act on Zhumeng's behalf in

16 any capacity or for any purpose.  (*Id*. ¶¶ 18-19.)

17 **Zhang Fraudulently Pledges Plaintiffs' Assets.**

18     SMC agreed to co-finance a motion picture (unrelated to Greyhound, Midway,

19 or any Plaintiffs' acts) through Zhang's separate offshore company, Golden Title.

20 (Han Decl. ¶ 31; Tie Decl. ¶ 22; Decl. of Xuanxuan Tie, dated March 5, 2021

("Second Tie Decl.") Ex. B.)  Plaintiffs did not know of, do not have an ownership interest in, and are not affiliated with Golden Title.  (Han Decl. ¶ 31; Tie Decl. ¶ 22.)  As collateral for the Golden Title loan, Zhang executed SMC documents for a lien on Golden Title's assets in the motion picture it sought to finance.  (Ex. 8.)  However, SMC demanded more collateral.  (*Id.*; Second Tie Decl. Ex. B.)  Through agreements with SMC, Zhang also agreed to pledge assets he did not own and which belonged to Plaintiffs.  (Han Decl. ¶ 32; Tie Decl. ¶ 23; Exs. 6-11.)  Plaintiffs did not authorize or give authority to Zhang to enter into those agreements.  (Han Decl. ¶¶ 33-34; Tie Decl. ¶¶ 24-25.)  Although the Zhang pledge documents show a signature from Zhengfu's president and legal representative, Jianu Han (Exs. 6-7), Ms. Han confirmed she did not sign SMC's assignment documentation.  (Han Decl. ¶ 32.)  On the Zhumeng pledge documents, Zhang admitted he signed his own name without Zhumeng's authorization and without any reason to believe he had such authority to do so.  (Tie Decl. ¶¶ 18, 19, 23, 37.)  Zhang admits to forging Plaintiffs' corporate "chops" (seals) and Ms. Han's signature.  (Second Tie Decl. Ex. B.)

**SMC Attempts to Take Control of the Greyhound and Midway Rights.**

On April 16, 2019, SMC purportedly sent a notice of default on the Golden Title loan obligation to Zhang, and beginning in June 2020, SMC sought to take control of Plaintiffs' rights ███████████████████████████.  (Exs. 11, 12.)  On September 21, 2020, SMC claimed to have conducted a UCC-authorized foreclosure

1   sale of Plaintiffs' rights and purchased those rights.  (Ex. 17.)  Plaintiffs did not learn

2   of that sale until November 3, 2020.  (Han Decl. ¶¶ 38-44; Tie Decl. ¶¶ 26-28.)

3       Following the foreclosure sale, SMC proclaimed to third parties that it owned

4   the Greyhound and Midway Rights.  (Exs. 18, 19.)  SMC demanded that SPWA pay

5   it all amounts due to Zhengfu under the Greyhound Co-Financing Agreement.  (Exs.

6   18, 23.)  SMC also asserted its purported ownership of rights to receive revenue from

7   an agency appointed ███████████████████████  to collect revenues

8   generated from the Midway motion picture.  (Ex. 19.)

9   **Plaintiffs Discover Zhang's Fraud and Zhang Confesses.**

10      On November 3, 2020, Plaintiffs learned of SMC's ownership claims and

11  efforts to control the Greyhound and Midway Rights.  (Han Decl. ¶ 46; Tie Decl.

12  ¶ 30.)  Plaintiffs promptly notified interested parties in the Greyhound and Midway

13  productions of their dispute of SMC's claims; and pending resolution of the dispute,

14  urged that no revenues or other rights should be provided to SMC.  (Han Decl. ¶¶ 50-

15  51; Tie Decl. ¶ 33.)

16      Plaintiffs also arranged a meeting with Zhang on November 5, 2020.  (Han

17  Decl. ¶¶ 52-53.)  At that meeting, Zhang signed a statement admitting his role in the

18  SMC-Golden Title loan transaction, including forging Plaintiffs' corporate "chops"

19  and Jianu Han's signature, and without authority, signing his name to documents on

20  behalf of Zhumeng.  (Second Tie Decl. Ex. B; Han Decl. ¶ 55; Tie Decl. ¶ 37.)

**SMC's Conduct is Harming Plaintiffs.**

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████     Because of SMC's ownership claims, SPWA is refusing, without Court clarification, to execute the necessary documentation allowing Zhengfu to distribute Greyhound in China, and is refusing to negotiate with Zhengfu for Greyhound's distribution in Hong Kong, Macau, and Taiwan.  (Han Decl. ¶¶ 58-64.)

China's media laws establish a quota of foreign motion pictures to be released in China within any year.  (*Id*. ¶ 61.)  A prospective distributor must apply to the Chinese government to include its motion picture in the quota for a given year.  (*Id*.)  Once such approval is granted, the distributor has a two-year window to distribute the motion picture, measured from the date the motion picture was first released anywhere in the world.  (*Id*.)  Zhengfu applied for, obtained approval, and is permitted to distribute the Greyhound motion picture as a part of the foreign film quota; that approval and permission expires on July 9, 2022.  (*Id*. ¶ 63.)

After obtaining distribution approval from the Chinese government, the distributor must also coordinate and obtain a theatrical release permit.  (*Id*. ¶ 62.)  Due to SMC's ownership claims, SPWA refuses to provide Zhengfu with the necessary authorizing documentation needed to obtain that permit.  (*Id*. ¶ 64.)  The

continuing delay in obtaining authorization for a theatrical release from SPWA

negatively affects Zhengfu's ability to exercise its China distribution rights and

timely release Greyhound in China. (*Id*. ¶¶ 65-66.) SMC's ownership claim also

impedes Zhengfu's ability to negotiate for its extended distribution rights in Hong

Kong, Macau, and Taiwan. (*Id*. ¶ 58.) SMC's interference has rendered Zhengfu

unable to enter into the necessary, formal agreements with third parties to market

and distribute Greyhound, causing ongoing injuries to Zhengfu's goodwill and

reputation within the Chinese motion picture industry. (*Id*. ¶¶ 67-68.)

## ARGUMENT

## I.   PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF.

### A.   The Standard For A Preliminary Injunction.

The Court should grant a preliminary injunction where a plaintiff shows: (1) it

is "likely to succeed on the merits"; (2) it is "likely to suffer irreparable harm in the

absence of preliminary relief"; (3) "that the balance of equities tips in [the plaintiff's]

favor"; and (4) "that an injunction is in the public interest." *hiQ Labs, Inc. v.*

*LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019).[2]  In evaluating a motion for a

preliminary injunction, courts in the Ninth Circuit may use an alternate "sliding scale

approach to these factors, according to which a stronger showing of one element

_____

[2] Unless otherwise indicated, internal alterations, citations, and quotation marks in
passages quoted from cases are omitted.

may offset a weaker showing of another.  So, when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only serious questions going to the merits." *Id*.

**B.     Plaintiffs Are Likely To Succeed On The Merits.**

Plaintiffs are likely to succeed on the merits of each of their claims.  Because the balance of hardships tips sharply in Plaintiffs' favor (Section I.D, below), and the Complaint and this Motion raise serious questions going to the merits, the Court should issue a preliminary injunction.

**1.     Zhengfu Owns the Greyhound Rights and Zhumeng Owns the Midway Rights (Count I).**

Plaintiffs are likely to show that Zhang fraudulently pledged the Greyhound and Midway Rights to SMC, and Plaintiffs are the rightful owners of those Rights.

First, ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███  Under the Greyhound Co-Financing Agreement, before Zhengfu could assign or transfer any rights, it had to first negotiate that assignment or transfer with SPWA. (Ex. 1 at § E.6.)  No such negotiation occurred.  (Compl. ¶ 64.)  Further, Zhengfu cannot assign or transfer its rights to a third party unless that third party first makes specific certifications to SPWA.  (Ex. 1 at § E.6.)  SMC made no certifications to

1   SPWA before Zhang pledged Zhengfu's Greyhound Rights.   (Compl. ¶ 65.)

2   Moreover, any purported assignment or transfer of Zhengfu's rights in violation of

3   these provisions would be a material breach and an event of default under the

4   Greyhound Co-Financing Agreement. (Ex. 1 at § E.6.)  Besides, as SPWA informed

5   SMC by letter on November 19, 2020, "Zhengfu China Distribution Rights were **_not_**

6   subject to alienation in any fashion to SMC or any other third party."  (Ex. 23 at 215.)

7   ████████████████████████████████████

8   ████████████████████████████████████████

9   ████████████████████████████████████████

10  ██████████████████████████████

11         Second, "[a] thief may not convey good title, even to a bona fide purchaser."

12  *Fed. Trade Comm'n v. J.K. Publications, Inc.*, No. CV 99-00044 ABC (AJWx),

13  2001 WL 36086354, at *12 (C.D. Cal. Jan. 17, 2001).  In *J.K. Publications*, the Court

14  held, to the extent funds were stolen, the banks holding those funds "may not now

15  claim they have an ownership interest superior to that of the very consumers from

16  whom the money was procured."  *Id.*, accord *Crocker Nat'l Bank of San Francisco*

17  *v. Byrne & McDonnell*, 178 Cal. 329, 333 (1918) (applying "rule" "that one who

18  buys [ordinary property] from a finder or from a thief obtains no title against the true

19  owner").  Similarly, under Cal. Com. Code § 9203(b)(2), a security interest is not

20  enforceable unless "[t]he debtor has rights in the collateral or the power to transfer

rights in the collateral to a secured party."  Neither Golden Title (the debtor) nor

Zhang had any ownership in the Greyhound or Midway Rights or the power to

transfer those Rights.  (*See* Sections I.B.2, I.B.3.)

### 2. SMC Violated Federal Copyright Law (Count II).

On October 15, 2018, SMC recorded an assignment of the Greyhound

copyright with the U.S. Copyright Office.  (Ex. 6; Ex. 23 at 219-26.)  SMC violated

federal copyright law in filing that purported assignment.

Under 17 U.S.C. § 204, "[a] transfer of copyright ownership, other than by

operation of law, is not valid unless an instrument of conveyance, or a note or

memorandum of the transfer, is in writing and signed by the owner of the rights

conveyed or such owner's duly authorized agent."  Here, the copyright owner did

not sign the copyright assignment.  Zhang forged the signature of Zhengfu's

president and legal representative, Jianu Han.  (Han Decl. ¶ 55.)  Nor did Zhengfu

authorize or give authority to Zhang to sign that assignment.  (Han Decl. ¶¶ 21-22,

28, 31-34.)  The assignment is invalid under 17 U.S.C. § 204.

SMC's filing constituted a fraud on the Copyright Office.  SMC knew it had

no claim to rights under the copyright.  As discussed in Section I.B.1 above, the

Greyhound Co-Financing Agreement prohibited assignment or transfer of rights

unless certain conditions were satisfied, which SMC knew were not satisfied here.

And as discussed in Section I.B.5 below, based on multiple red flags and suspicious

circumstances, SMC knew or should have known that Zhang did not have authority or authorization to transfer rights to the Greyhound copyright.

### 3.    SMC's Foreclosure Sale was Defective (Count III).

On September 21, 2020, SMC claimed to have conducted a foreclosure sale under the Uniform Commercial Code of the "Collateral" (*i.e.*, the Greyhound and Midway Rights) and purchased that Collateral in the foreclosure sale.   SMC's purported foreclosure sale was defective for at least four reasons.

First, SMC based that foreclosure sale on the fraudulent and unenforceable pledge agreements signed by Zhang.  Plaintiffs never signed those documents and were never the debtors in the Golden Title loan transaction.  (*See* pp. 5-6, above.)

Second, Zhang could not have provided SMC with enforceable security interests under Cal. Com. Code § 9203(b), which provides "a security interest is enforceable against the debtor and third parties with respect to the collateral only if . . . [t]he debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party."  When Zhang pledged Plaintiffs' Greyhound and Midway Rights, Zhang did not have rights, or the power to transfer rights in that collateral to SMC.  (Exs. 1, 3, 4.)  Nor did Plaintiffs authorize or grant authority to Zhang to transfer their rights in that collateral.  (Han Decl. ¶¶ 21-22, 28, 31-34; Tie Decl. ¶¶ 18-19, 22-25.)  *See* Cal. Com. Code § 9203(b)(2).

Third, under Cal. Com. Code § 9611, SMC was required but failed to send

"an authenticated[3] notification of disposition" of the collateral to Plaintiffs.  Instead, SMC sent notification only to Zhang.  (Han Decl. ¶¶ 41-44; Tie Decl. ¶¶ 27-28.)

<u>Fourth</u>, under Cal. Com. Code §§ 9607 and 9610, a foreclosure sale must be "commercially reasonable."  SMC's "public foreclosure sale" notices were not calculated to attract any bidders.  The Certificate of Foreclosure and Memorandum of Sale, prepared by SMC's counsel, states that SMC entered a "credit bid" of $8,000,000 and "[n]o counter-bids were submitted." (Ex. 17 ¶ 4.)  That sale was not "commercially reasonable."  *Gemcap Lending I LLC v. Crop USA Ins. Agency Inc.*, CV 13-05504 SJO (MANx), 2015 WL 12746212, at *6 (C.D. Cal. Aug. 17, 2015) (rejecting foreclosure sale where, as here, the seller sold its security interest in disputed assets to itself and the seller's notice "was not calculated to attract bidders").

For the above reasons, SMC's foreclosure sale was defective.

### 4.  SMC Intentionally Interfered with Plaintiffs' Contractual Relations (Count IV).

Indisputable evidence demonstrates SMC's intentional interference with Plaintiffs' contractual relations.  To succeed on a claim, a plaintiff must prove:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual

---

[3] While Plaintiffs have not seen an original copy of SMC's notification, which SMC addressed to Golden Title and Plaintiffs to Zhang's attention, the version obtained from Zhang's email was unsigned and does not appear to have been "authenticated."  (*See* Ex. 15.)

breach or disruption of the contractual relationship; and (5) resulting damage.

*Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998). "[I]t is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Id.* Nor is the plaintiff required to prove that the defendant's "primary purpose" was to disrupt the contract; a defendant is liable where the defendant "knows that the interference is certain or substantially certain to occur as a result of [its] action." *Id.* at 531.

Plaintiffs demonstrate and establish each element of this claim:

1. ████████████████████████████████

2. SMC knew of Plaintiffs' contracts and sought pledges of Plaintiffs' rights under those contracts. (Exs. 6-11.)

3. SMC intended to disrupt Plaintiffs' contractual relations with third parties: it filed a forged copyright assignment, engaged in a sham UCC foreclosure sale to take control of Plaintiffs' rights, and demanded payment from Plaintiffs' co-financiers. (Ex. 18 (SMC demanding Zhengfu's rights from SPWA); Ex. 19 (SMC sought to divert funds due to Zhumeng); Ex. 23 at 219-26 (SMC's copyright filings).)

4. SMC's actions actually disrupted Plaintiffs' contractual relations. (Han Decl. ¶¶ 57-60, 64; Tie Decl. ¶¶ 39-41; Ex. 19 (SMC added to agreement for payment of Midway revenues); Ex. 23 (SPWA holding payment due to Zhengfu due to SMC's claims).)

5. Plaintiffs have been damaged: ████████████████ ██████████████ and Zhengfu cannot distribute Greyhound in China or negotiate for Greyhound's distribution in Hong Kong, Macau, and Taiwan. (Han Decl. ¶¶ 57-68; Tie Decl. ¶¶ 39-41.)

Accordingly, Plaintiffs are likely to succeed on this claim.

### 5.   SMC Violated Unfair Competition Law (Count V).

Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL") permits claims against a defendant that engaged in "unlawful, unfair or fraudulent" business practices.  SMC violated all three prongs of the UCL.

"The scope of the UCL is quite broad."  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).  "A fraudulent business practice is one which is likely to deceive the public."  *Id.*  "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  *Id.* at 1473.  An unlawful business act or practice is one that "violates any law, civil or criminal, statutory or judicially made, federal, state or local."  *Id.* at 1474.

Under Section 17203 of the UCL, the Court may enjoin a party that engages in unfair competition "as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Plaintiffs satisfy this standard.

SMC knew or should have known that Zhang could not pledge Plaintiffs' rights. ██████████████████████████████████████████████

█████████ and SMC's loan was under reasonably suspicious circumstances:

1.  Zhang purportedly had the authority to pledge the assets of two independent and unrelated companies.

2.  Zhengfu and Zhumeng were purportedly pledging their assets to benefit a third separate entity, Golden Title, unconnected to Plaintiffs.

3.  Neither Zhengfu nor Zhumeng identified Zhang in publicly available information that provided its legal representative, shareholders, executive director, supervisor, and manager.

4.  Apart from Zhang (who falsely claimed to represent both Zhengfu and Zhumeng), SMC did not communicate with anyone from Zhengfu or Zhumeng.  Nor do Plaintiffs believe SMC communicated with anyone claiming to be acting as Plaintiffs' legal counsel.

5.  The Midway pledge agreement purportedly between SMC and Zhumeng provides that notices to Zhumeng should be sent only to Alex Zhang at Zhang's "yahoo.com" email address.  (Ex. 8 at 150.)

(Compl. ¶ 67.)  Against this background, SMC's acceptance of Zhang's purported pledges of Plaintiffs' rights was unfair.

SMC also committed acts "forbidden by law."  SMC registered its fraudulent Greyhound copyright assignment with the U.S. Copyright Office, violating federal copyright law, and committing fraud on the Copyright Office.  (*See* Section I.B.2.) SMC's foreclosure sale violated California's Commercial Code.  (*See* Section I.B.3.) SMC also tortiously interfered with Plaintiffs' contractual and prospective economic relations (Sections I.B.4; I.B.6) and converted Plaintiffs' property (Section I.B.7).

Thus, Plaintiffs are likely to prove that SMC engaged in fraudulent, unfair, or unlaw business practices, in violation of the UCL.

### 6. SMC Interfered with Plaintiffs' Prospective Economic Relations (Count VI).

Plaintiffs are also likely to succeed on their claim that SMC intentionally or negligently interfered with Plaintiffs' prospective economic relations.

To prove intentional interference with prospective economic advantage, a plaintiff must show:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (Cal. 2003). To satisfy the intent requirement, a plaintiff may plead "the defendant desired to interfere with the plaintiff's prospective economic advantage," or "the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Id.* at 1154.

Plaintiffs are likely to prove each element of this claim:

1.  ██████████████████████████████████████████████████████
    ██████████████████████████████████████

2.  SMC knew of Plaintiffs' relationships with third parties (the co-financiers) and improperly encumbered Plaintiffs' rights. (Exs. 6-11.)

3.  SMC intended to disrupt Plaintiffs' relationships with third parties by filing a forged copyright assignment (Ex. 23 at 219-26), conducting a

sham UCC foreclosure sale of ██████████████ designated as collateral for SMC's loan to Golden Title, which held no interest in those rights (Ex. 17), and demanding payment directly from ██████ ███████ (Exs. 18, 19).

4.   SMC's actions actually disrupted Plaintiffs' relationships with third parties.  Plaintiffs are not receiving revenues from the releases of the Greyhound and Midway motion pictures, and Zhengfu cannot distribute Greyhound in China or negotiate for Greyhound's distribution in Hong Kong, Macau, and Taiwan.  (Han Decl. ¶¶ 57-60, 64; Tie Decl. ¶¶ 39-41; Exs. 19, 23.)

5.   SMC's acts were a proximate cause of Plaintiffs' economic harm.  (*See* pp. 8-9, above.)

To prove SMC's negligent interference, Plaintiffs must show the first, second, fourth, and fifth elements above, and SMC's negligence.  *N. Am. Chemical Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997).  Plaintiffs are likely to satisfy this standard.  SMC should have known Plaintiffs' relationships with third parties would be disrupted if it failed to act with due care in its loan to Golden Title.  Indeed, SMC expressly acted to disrupt those relationships after Golden Title defaulted on its SMC loan.  SMC acted negligently by failing to heed:  (1) ███████████████████ ██████████████████████████████████████████████████; and (2) the other red flags and suspicious circumstances indicating that Zhang was defrauding Plaintiffs.  (*See* Section I.B.5.)  Because SMC was required but failed to make reasonable inquiries regarding the legitimacy of the Golden Title loan, Plaintiffs are likely to succeed on this claim.  *See Sun 'n Sand, Inc. v. United Cal.*

*Bank*, 21 Cal. 3d 671, 694-95 (Cal. 1978) (suspicious circumstances alerted bank to the risk of fraud, and bank was required to make reasonable inquiries).

### 7.   SMC Converted Plaintiffs' Rights (Count VII).

SMC wrongfully converted Plaintiffs' property.  To prove a conversion claim, a plaintiff must show:  "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015).   "Any act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion."  *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 50 (2010).  "Conversion is a strict liability tort, so [a party] cannot defeat the claim on the grounds that it accepted a forged signature in good faith."  *Fong v. E. West Bank*, 19 Cal. App. 5th 224, 235 (2018).

██████████████████████████████████████████████████

████████████████████████████████████████████████ SMC acted wrongfully by:  (a) engaging in the Golden Title loan transaction, █████████ ████████████████████████████████████████ red flags, and suspicious circumstances; (b) accepting Zhang's fraudulent pledges of the Greyhound and Midway Rights; (c) seeking to foreclose on those Rights; and (d) demanding that third parties pay it amounts owed to Plaintiffs.  Due to SMC's acts, Plaintiffs have suffered damages.  (Han Decl. ¶¶ 57-68; Tie Decl. ¶¶ 39-41.)   Thus, Plaintiffs

wrongfully converted Plaintiffs' property. *See Mellen Inc. v. Biltmore Loan & Jewelry – Scottsdale LLC*, No. CV-16-00648-PHX-DLR, 2016 WL 3144165, at *7 (D. Ariz. June 6, 2016) (granting preliminary injunction where a third party sold the plaintiff's property to the defendant without authorization).

### C.    **Absent An Injunction, Plaintiffs Will Suffer Irreparable Injury.**

Pending resolution, Plaintiffs seek to preserve the *status quo* and to prevent SMC from (a) seeking or collecting any revenues generated from the exploitation of the Greyhound and Midway motion pictures; (b) transferring or encumbering any ownership, rights, or interests in the Greyhound and Midway motion pictures to third parties; and (c) interfering with Zhengfu's distribution rights.   Without such injunction, Plaintiffs will be irreparably injured.

First, the Court should enjoin SMC from seeking or collecting revenues generated from the Greyhound and Midway motion pictures.  SMC could dissipate any collected revenues.  SMC claims to be a financing company; it can use the Greyhound and Midway revenues in loans to third parties. Or, as a limited liability company, it may pass through those revenues to its members, leaving Plaintiffs with no ability to enforce any judgment against SMC.

Second, without an injunction, SMC could sell or encumber its claimed rights in the Greyhound and Midway motion pictures, leaving Plaintiffs to chase third parties to recoup their assets. *Mellen*, 2016 WL 3144165, at *6 (the plaintiff would

be irreparably harmed if the defendant were free to sell a "specific, rare item, the value of which is not readily determinable," before identifying its rightful owner).

Third, Zhengfu will be irreparably harmed unless the Court enjoins SMC from interfering with Greyhound's distribution. Due to SMC's claims, SPWA has refused to cooperate with Zhengfu's distribution in China, Hong Kong, Macau, and Taiwan. (Han Decl. ¶ 58.) Zhengfu's time to distribute the Greyhound motion picture in China, and the profits it could earn from such distribution, are dwindling. (Han Decl. ¶¶ 61-66.) Zhengfu's failure to proceed with Greyhound's distribution is also damaging Zhengfu's goodwill and reputation. (*Id*. ¶ 67-68.) By contrast, an injunction ordering SMC to cease interfering with Zhengfu's Greyhound distribution rights will not harm SMC simply because SMC does not have permission from the Chinese government to distribute the Greyhound motion picture. (*Id*. ¶¶ 61, 63.)

In *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 835-36 (9th Cir. 2001), the Ninth Circuit affirmed the district court's preliminary injunction, explaining that the plaintiff "stood to lose its newfound customers and accompanying goodwill and revenue," and "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Id*. at 841. Here, as in *Stuhlberg*, the Court should enjoin SMC from hindering Zhengfu's distribution of the Greyhound motion picture and prevent Zhengfu's loss of revenue, prospective customers, and goodwill.

**D.**     <u>**The Balance Of Equities Weighs In Plaintiffs' Favor.**</u>

"In balancing the equities, the court must evaluate[] the interim harm defendants are likely to sustain if the injunction is granted, and compare it with the harm plaintiff is likely to suffer if an injunction does not enter." *De Vico v. U.S. Bank*, CV 12-08440 MMM (FFMx), 2012 WL 10702854, at *6 (C.D. Cal. Oct. 29, 2012) (plaintiff's loss of residence outweighed defendant's inability to recoup debt).

The harm to Plaintiffs absent an injunction far outweighs any harm to SMC if the Court issues an injunction. ███████████████████████████ █████████████████████████     ███████████████████ ████████████████████████████ Zhengfu owns distribution rights valued at tens of millions of dollars, the value of which declines with each passing day.  (Han Decl. ¶¶ 65-66; *see also* Section I.C.)

On the other hand, SMC is unlikely to suffer any harm from an injunction. While SMC seeks to recoup the Golden Title loan, SMC cannot recover that loss from Plaintiffs.  Nor can SMC distribute Greyhound.  (*See* pp. 8-9, above.)

**E.**     <u>**A Preliminary Injunction Serves The Public Interest.**</u>

California has "a clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the country." *Diamond Multimedia Systems, Inc. v. Superior Court*, 968 P.2d 539, 556 (Cal. 1999).  "California also has a legitimate and compelling interest in

1  preserving a business climate free of fraud and deceptive practices." *Id.* at 557

2  (noting that "California business depends on a national investment market to support

3  [its] industry"). Similarly, in *Mellen*, the court explained that the "public has a great

4  interest in maintaining the status quo pending the determination of the lawful owner

5  of a valuable and precious item. Preventing a party from selling an item with

6  disputed ownership serves this interest." 2016 WL 3144165, at *7.

7      Here, it is undisputable that Plaintiffs are victims of fraud; Zhang admitted his

8  fraudulent scheme. (Second Tie Decl. ¶¶ 3-4 & Ex. B.) And now, SMC is seeking

9  to exploit Zhang's admitted fraudulent scheme to Plaintiffs' detriment. California's

10  public interest favors halting SMC's efforts.

11  **II.   GIVEN THE PROOF, NO EVIDENTIARY HEARING IS NEEDED.**

12      The Court should grant Plaintiffs' request for preliminary injunctive relief

13  based on the parties' written submissions. "It is well established that trial courts can

14  consider otherwise inadmissible evidence in deciding whether or not to issue a

15  preliminary injunction." *Rubin ex rel. NLRB v. Vista Del Sol Health Services, Inc.*,

16  80 F. Supp. 3d 1058, 1072 (C.D. Cal. 2015). "A district court may . . . consider

17  hearsay in deciding whether to issue a preliminary injunction." *Johnson v.*

18  *Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

19      Plaintiffs submitted ample evidence for a preliminary injunction. Thus, the

20  Court should grant this Motion on the papers, without an evidentiary hearing. *See,*

---

PLAINTIFFS' MEMORANDUM OF LAW – PRELIMINARY INJUNCTION          24

*e.g.*, *Arcturus Therapeutics Ltd. v. Payne*, Case No. 18 cv 766-MMA (NLS), 2018 WL 2316790, at *1, 4 (S.D. Cal. May 22, 2018) (overruling "numerous" evidentiary objections in granting injunction in part "on the papers and without oral argument").

## III.   THE COURT SHOULD WAIVE THE SECURITY REQUIREMENT.

While Fed. R. Civ. P. 65(c) requires security by the movant "in an amount that the court considers proper," "[t]he district court is afforded wide discretion in setting the amount of the bond, and *the bond amount may be zero* if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 882 (9th Cir. 2003) (emphasis added).

Here, the Court should dispense with the security requirement because an injunction will not harm SMC.  Third parties are holding the revenues generated by the Greyhound and Midway motion pictures pending resolution of this dispute, and the requested relief "simply enjoin[s] [SMC] from doing something [it] never had a right to do in the first place," *see Comet Techs. U.S.A. Inc.*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *6 (N.D. Cal. Mar. 15, 2018), *i.e.*, to exercise ownership over Plaintiffs' Greyhound and Midway Rights.

## CONCLUSION

The Court should grant Plaintiffs' Motion for a Preliminary Injunction.

Dated:   March 10, 2021                 Respectfully submitted,

                                        ZHONG LUN LAW FIRM
                                        Leodis C. Matthews, Esq.
                                        Donald K. Wilson, Jr., Esq.
                                        Dick P. Sindicich, Esq.

                                        Attorneys for Plaintiffs ZHENGFU
                                        PICTURES LIMITED and BEIJING
                                        ZHUMENG QIMING CULTURE &
                                        ART CO., LTD.

                              By:       */s/ Leodis C. Matthews*
                                        For the Firm

---