Scott J. Tepper  (SBN: 51693)
stepper@raskinlawllp.com
Gary J. Gorham (SBN: 171061)
ggorham@raskinlawlp.com
Lucy H. Mekhael (SBN: 185325)
lmekhael@raskinlawllp.com
RASKIN GORHAM ANDERSON LAW
11333 Iowa Avenue
Los Angeles, CA 90025
Tel: (310) 202-5544 Fax: (310) 202-5540
Attorneys for Defendant SMC Specialty Finance, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZHENGFU PICTURES LIMITED and BEIJING ZHUMENG QIMING CULTURE & ART CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>SMC SPECIALTY FINANCE, LLC,<br><br>Defendant. | Case No.: 2:21-CV-01795-SB-AGRx<br><br>Before Hon. Stanley Blumenfeld, Jr. District Court Judge<br><br>**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION TO CONTINUE HEARING ON MOTION FOR PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY AND DECLARATION OF SCOTT J. TEPPER**<br><br>**(FILED CONCURRENTLY WITH APPLICATION TO CONTINUE HEARING AND LODGED PROPOSED ORDER)**<br><br>Current Hearing Date:    April 9, 2021<br>Time:                                   8:30 a.m.<br>Place:                          Courtroom 6C |

**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION**

Defendant SMC Specialty Finance, LLC (hereinafter "SMC" or "defendant") submits this Memorandum in Support of its Ex Parte Application.

SMC seeks an eight week continuance of the hearing date so that it may

1

properly prepare for and oppose the Motion for Preliminary Injunction. The hearing is currently calendared for April 9, 2021, and the date for SMC's opposition is currently this Friday, March 19, 2021. The specific reasons for the continuance are more fully set forth below and supported in the attached Declaration of Scott J. Tepper (hereinafter "Tepper Decl.").

### I. Disclosure Pursuant to Local Rule 7-19

Pursuant to Local Rule 7-19 the names, address, telephone number and email addresses of counsel for the opposing party are as follows:

Leodis C. Matthews, email: LeodisMatthews@ZhongLun.com;

Donald K. Wilson, Jr., email: DonaldWilson@ZhongLun.com;

Dick P. Sindicich, email: DickSindicich@ZhongLun.com;

Zhong Lun Law Firm, LLP, 4322 Wilshire Boulevard, Suite 200, Los Angeles, CA 90010-3792; and

Telephone: 323-930-5690.

Counsel for plaintiffs was provided with written and oral notice of this ex parte application on March 11, 2021. (See Tepper Decl. at ¶ 4.)

### II. Prior Efforts to Resolve This Matter

SMC's prior efforts to obtain a continuance were not successful. On Thursday, March 11, 2021, defendant's undersigned counsel requested that plaintiffs' counsel agree to continue the preliminary injunction hearing and agree to expedited discovery. This included an email and a telephone conversation among five attorneys at 4:30 p.m. on that date. (See Tepper Decl. at ¶ 5 and Exhibit 1 thereto relating to the email notice.)

Plaintiffs' counsel stated that they would consult with their clients about the conditions they would require for such a stipulation. On March 12, 2021, plaintiffs' counsel made a proposal by email to conditionally stipulate to continue the hearing, but the conditions were not acceptable to defendant. (See Tepper Decl. at ¶ 6.)

### III. Procedural Background Information

While this action was filed on February 22, 2021, the entire record was sealed by the clerk of court. Defendant learned of the lawsuit when, after the close of business on Friday, March 5, 2021, plaintiffs' counsel wrote that a lawsuit was filed and asked if defendant would accept service. (Notably, plaintiffs' counsel did not provide any of the filed pleadings, the caption for the case or any information identifying in which Court the action was filed.) (See Tepper Decl. at ¶ 7.) On Monday, March 8, 2021, undersigned counsel wrote plaintiffs' counsel back that if the action had been filed in this Court he would waive service of the summons and he asked for a copy of everything filed in the action. (See Tepper Decl. at ¶ 8.)

Although plaintiffs' counsel provided a copy of the complaint and some of the initial documents to defendant's counsel on March 8th, they did not provide all the pleadings which plaintiffs had filed. The preliminary injunction papers were not provided to defendant's counsel, and thus not served, until the evening of March 10, 2021, through an email to defendant's undersigned counsel by way of a Dropbox link. This email was sent before counsel for defendant had appeared in this action. (See Tepper Decl. at ¶ 9.)

It appears that plaintiffs' counsel have been preparing a motion for a preliminary injunction for a lengthy period of time; some of the papers date to November 5, 2020. (See Tepper Decl. at ¶ 10 and plaintiffs' Exhibit B to second Tie Declaration, ECF 15-4, p. 3.)

### IV. Defects in The Moving Papers Requiring Re-Filing and Therefore a Hearing Date Continuance

The Preliminary Injunction motion papers were not properly served on the defendant because the Memorandum of Law (ECF 15-1) filed to support the Preliminary Injunction Motion includes numerous substantial redactions. An unredacted copy has *not* been filed with the Court nor served on nor provided to

defendant's counsel. (See Tepper Decl. at ¶ 11.)

The redactions in the Memorandum (ECF 15-1) are numerous, at pp. i:6;[1] 1:6-9 & 16-20; 2:1 & 9-10 & 19-20; 3:1; 5:3-14; 6:19; 7:7; 8:2-5; 10:13-16; 11:7-10; 15:9-10 & 18-19; 16:20; 17:1; 18:17-17; 19:1-3 & 14-15; 20:13-16; and 23:8-10.

Thus, under Local Rules 7-5 and 7-12 the hearing should be continued in any event since defendant is obviously entitled to an unredacted copy of the Memorandum of Law at least 28 days before the hearing date.[2]

## V. The Need for Expedited Discovery to Defend Against the Preliminary Injunction Motion

The preliminary injunction motion states it is based, in part, on the 51-page complaint (ECF 1) and an appendix of materials in excess of 286 pages (ECF 12 and revised in ECF 14). (See Motion, ECF 15, at p. 2:8-12.)

The declarants are located in China. In addition, defendant is not party to the two underlying transactions in this case – the investments each plaintiff made in two separate film projects – therefore, it does not have access to the documents and communications relating to those transactions; nor does defendant have access to the plaintiffs' internal communications, such as emails, concerning the loan transaction which is the subject of this case. (See Tepper Decl. at ¶ 13.)

That paperwork includes agreements between plaintiffs and Sony Pictures,

---

[1] References are to the internal pages in the document and include line numbers. Because of errors in the spacing in plaintiffs' document, many lines are between two line numbers on the pleading paper. The redactions, however, are obvious.

[2] While this error will require plaintiffs to re-file their papers, if they simply refile them so that the opposition is due a week later, this will be a burden on undersigned counsel who has a trip long planned and paid for to see his daughter (a 2L student at UVA Law School) whom he has not seen for 16 months. The trip to Charlottesville, VA is planned between March 19 and March 26. (See Tepper Decl. at ¶ 12.) In any event, substantially more time is needed to prepare defendant's reply than an extra week.

4
**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION TO CONTINUE HEARING ON PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY**

Lionsgate and Centropolis. Those companies were involved in the production and distribution of certain motion pictures, and plaintiffs' economic rights in those motion pictures were collateralized to secure payment of a loan from defendant for their benefit. That collateral was nonjudicially foreclosed on in September 2020, following notice and publication. (See Tepper Decl. at ¶ 14.)

In sum, this case involves complex transactions, as to much of which defendant was not a party, involves witnesses in China, and includes numerous documents that defendant's representatives are seeing for the first time. Plaintiffs' motion for a preliminary injunction gives defendant eight days to prepare an opposition. That is not humanly possible. (See Tepper Decl. at ¶ 15.)

The need for discovery based on the contradictory positions taken by plaintiffs in their papers is further discussed in the next section.

## VI.  Plaintiffs' and Defendant's Positions as to the Dispute, and Plaintiffs' Contradictory Positions Requiring Discovery from Plaintiffs

From a review of the complaint and motion papers, plaintiffs contend that this dispute involves the rights to the proceeds from the distribution of two motion pictures produced in the United States, *Greyhound* (written by and starring Tom Hanks) and *Midway* (directed by Roland Emmerich). Plaintiffs further contend that a representative of one of the plaintiffs improperly obtained a loan for a proposed new film for an unrelated company and fraudulently pledged as collateral plaintiffs' rights as security. (Complaint, ECF 1, at ¶¶ 2 & 3, pp. 2:13 to 3:14.)

Defendant believes the true facts are to the contrary and that this is a case of borrowers' remorse coupled with fraudulent efforts to recapture collateral which was pledged for a loan and which defendant properly and legitimately foreclosed upon. Defendant's position as to the dispute is as follows:

Alex Zhang (also known as Xi Zhang), and Han Sanping are partners in the film production and distribution business in China, with a focus on "Hollywood"

films. The plaintiff companies were and are controlled by Mr. Han, the former head of China Film Group Corporation, a Chinese-government owned film company which controls the motion picture industry in China. When U.S.-China relations soured in 2018, and banking restrictions were imposed on Chinese companies seeking to invest in U.S. businesses (including film production), Mr. Han instructed Mr. Zhang to form Golden Title Investments as a British Virgin Islands company with Mr. Zhang as sole director.[3] (See Tepper Decl. at ¶ 16.)

Mr. Zhang contacted defendant in September 2018 to discuss a bridge loan for a proposed movie with the working title *Destroyer*. (The theme of *Destroyer* was similar to *Greyhound* and *Midway*: a World War 2 action movie based on U.S. sea power.) Mr. Zhang provided credible reasons for the need of a short bridge loan while Zhengfu Pictures worked on releasing its U.S. dollar co-investment funds for the film from China. As security for the loan, Golden Title and Zhengfu Pictures offered Zhengfu Pictures' entitlements in *Greyhound* which was then in production. (See Tepper Decl. at ¶ 17.)

Defendant proceeded with the loan and engaged legal counsel in several jurisdictions (including China) to assist with the closing. The loan closed in October 2018 pursuant to which, among other things, Golden Title was the borrower and Zhengfu Pictures was an "accommodation party" pursuant to which Zhengfu Pictures pledged its interests in *Greyhound* as collateral for the loan. The principal amount of the loan at closing was $3,210,000.00. Through subsequent amendments of the loan documents defendant eventually loaned Golden Title $4,305,000.00 as of December 24, 2018 with a maturity date for repayment of January 31, 2019. As additional security in return for the second tranche of the loan, Mr. Han's single purpose entity, plaintiff Beijing Zhumeng Qiming Culture & Art Co., Ltd., pledged

---

[3] Although he appears to be the ultimate party in interest, Mr. Han is not disclosed as an interested party in plaintiffs' Certification and Notice of Interested Parties, ECF 4.

6
**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION TO CONTINUE HEARING ON PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY**

additional collateral – its interest in *Midway*. (See Tepper Decl. at ¶ 18.)

Over the next year and a half, Golden Title never repaid any portion of the loan. As a result, in September 2020 defendant foreclosed on the collateral through a nonjudicial foreclosure sale conducted by Loeb and Loeb. Before the foreclosure Loeb and Loeb gave prior notice of the foreclosure in August and September 2020 to plaintiffs by email and Federal Express and published notice of the foreclosure in the "trades," including *The Hollywood Reporter* and *Variety*. (See Tepper Decl. at ¶ 19.)

It was not until January of this year, four months after the foreclosure, that plaintiffs' current counsel contacted SMC. Those discussions occurred at the end of January 2021 and plaintiffs' counsel was supposed to get back to defendant with a proposal. That proposal never came. In its place was this lawsuit. (See Tepper Decl. at ¶ 20.)

In their Complaint, plaintiffs dramatically declare their own principal agent, Mr. Zhang, defrauded plaintiffs. Plaintiffs assert that Mr. Zhang "had no authority to act on behalf of Plaintiffs." (ECF 1, at ¶ 12, p. 7:1-5.) They admit that Mr. Zhang was the front-man on all negotiations, but insist his role was "limited to interpreting and transmitting information during the negotiations . . . ." (*Id.*, at ¶ 30, p. 13:12-13.) Plaintiffs' own evidence is self-contradictory. One of plaintiffs' declarants, Tiffanie Tie, testifies that "Zhang was not, and has never been, an employee or partner of Zhumeng." (Complaint, Exhibit 25, ECF 14-25, at ¶ 16, p. 7.) Yet Ms. Tie also authenticates emails she sent to Lionsgate and Centropolis, contradicting her sworn testimony and referring to Mr. Zhang as "a former employee of Zhumeng . . . ." (Complaint, Exhibit 21, ECF 14-21 at fourth paragraph.) Defendants should be allowed to question Ms. Tie, in person and in the United States, about whether she is misrepresenting Mr. Zhang's role at Zhumeng to this Court, or whether she made false statements about Mr. Zhang's roles to other

interested parties.

Plaintiffs declare that Mr. Zhang has confessed to his actions in a written statement (Complaint, ECF 1, at ¶ 12, p. 7:2-4) purportedly authenticated by Ms. Tie in a declaration in support of the preliminary injunction motion (ECF 15-2) but Ms. Tie fails to include a declaration from Mr. Zhang and the recorded video is not provided.  As described in the Complaint, Mr. Zhang allegedly made his "confession" statement after a "discussion" led by an unidentified "Third-Party Contact." (ECF 1 at ¶ 93, p. 32:7-8.)  SMC should be allowed to review the videotape, learn the identity of the "Contact" and explore the circumstances under which Mr. Zhang "confessed."  SMC believes and contends that the "confession" is fraudulent. (See Tepper Decl. at ¶ 21.)

Mr. Zhang's supposed "confession" raises significant issues about the veracity of plaintiffs' allegations.  In the supposed translation submitted as Exhibit B to the Second Declaration of Tiffanie Tie (ECF 15-4), Mr. Zhang purportedly states that "In terms of Greyhound, I represented Zhengfu, and my job was to facilitate this project's investment." (ECF 15-4, page 3 of 3.)   SMC should be allowed to depose Mr. Zhang, in person and in the United States, about his authority to bind plaintiffs Zhengfu Pictures and Beijing Zhumeng, among other things.

SMC also should be allowed to question Mr. Han, whose interests are being advanced in this case.  The depositions of others in the motion picture industry in the United States who dealt with Mr. Zhang and Mr. Han will also provide probative evidence of Mr. Zhang's authority for both plaintiffs and those depositions will need to be taken as well. (See Tepper Decl. at ¶ 22.)

Based on SMC's position and its understanding of the facts, as recited above, significant discovery will be necessary, both from plaintiffs' officers, directors and shareholders as well as third parties. This discovery cannot be done in the time left for defendant to respond to plaintiffs' motion for a preliminary injunction. (See

8

**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION TO CONTINUE HEARING ON PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY**

Tepper Decl. at ¶ 23. As set forth at paragraph 23, in the telephone call between counsel on the afternoon of March 11, 2021, Lee Matthews, one of plaintiffs' counsel, stated to the undersigned that the depositions defendant sought just of Ms. Tie and Mr. Zhang themselves could not be accomplished in the next three weeks.)

### VII. This Court's Authority to Continue the Hearing and to Order Expedited Discovery

It is within this Court's discretion whether to continue the hearing and also to order expedited discovery. (Cf. *Garrett v. City and County of San Francisco*, 818 F. 2d 1515, 1519 (9th Cir. 1987) [continuing summary judgment motion and allowing "essential discovery"]. See also Standing Order, ECF 11, at ¶ 10, p. 10:17-19.)

Defendant submits that it has made a proper showing that this Court should exercise its discretion here to continue the preliminary injunction hearing from April 9, 2021 to June 4, 2021. Defendant also believes it has demonstrated the necessity for expedited discovery as well.

### VIII. Conclusion

Defendant requests that the Court continue the current hearing date on plaintiffs' motion for a preliminary injunction for eight weeks, from Friday, April 9, 2021 to Friday, June 4, 2021 at 8:30 a.m. in Courtroom 6C, and that the Court further order that the parties may engage in expedited party and third-party discovery related to the preliminary injunction motion.

Respectfully submitted,

Dated: March 15, 2021

RASKIN GORHAM ANDERSON LAW

/s/ *Scott J. Tepper*
By: _____
Scott J. Tepper
Attorneys for Defendant SMC Specialty Finance, LLC

**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION TO CONTINUE HEARING ON PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY**